UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARTIESE WILLIAMS, | : | CIVIL ACTION NO. 3:CV-07-0590 |
| Petitioner | : | (Judge Nealon) |
| v. | : | FILED SCRANTON |
| S. HISLOP, | : | NOV 16 2007 |
| Respondent | : | PER _____ DEPUTY CLERK |

## MEMORANDUM AND ORDER

Martiese Williams, ("Williams"), an inmate formerly confined in the United States Penitentiary, Atlanta, Georgia, ("USP-Atlanta"),[1] filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Named as Respondent is S. Hislop, Warden at USP-Atlanta. Petitioner claims that while previously incarcerated at USP-Atlanta, his due process rights were violated during the course of a prison disciplinary hearing, where he was found guilty of the prohibited act of Conduct Which Disrupts, Most Like, Aiding Escape, a violation of Disciplinary Code Section 200/200A, Receiving Money From Another Person for Any Illegal or Prohibited Purpose, a violation of Disciplinary Code Section 217, and

---

[1] Petitioner is currently housed in the Canaan United States Penitentiary, Waymart, Pennsylvania.

Possession of a Hazardous Tool, a violation of Disciplinary Code Section 108. Specifically, he claims that he received inadequate notice of the charges, that there was non-disclosure of confidential evidence relied upon to support the disciplinary ruling, that there was insufficient evidence of misconduct relied upon to find him guilty, and that the Disciplinary Hearing Officer ("DHO") was biased in making her ruling. (Doc. 1, petition at p. 1). The petition is ripe for disposition and, for the reasons that follow, will be denied.

**Background**

On April 7, 2006, at approximately 12:12 p.m., Petitioner was served with Incident Report No. 1453290 for "Conduct Which Disrupts the Security of the Institution, Most 10. Code; 299; Like Code 200, Escape; Receiving Money From Another Person for Any Illegal or Prohibited Purpose, 217; Possession of Anything not Authorized, 305." (Doc. 1, Ex. 1, Incident Report). The incident report, which was written by Special Investigative Agent, D. Acre, reads as follows:

> Description of Incident (Date: 4/7/06 Time: 8:00 a.m. Staff became aware of incident)
> Based on surveillance camera footage and corroborated witness statements, an SIS investigation determined that inmate Martiese Williams, Reg. No. 09941-021, received money from other inmates to assist them in departing the environs of the Federal Prison Camp on several occasions.

2

> Inmate Williams also admitted to having possession of a cellular telephone to communicate with the inmates during their departure and returns. See SIS investigation case ATL-06-043.

Id. On April 11, 2006, Petitioner appeared before the Unit Disciplinary Committee ("UDC"). Id. The UDC referred the charge to the DHO for a "recommended disciplinary transfer, loss of all social privileges for 180 days." Id.

On April 12, 2006, Petitioner appeared for a hearing before DHO, S. Hislop. (Doc. 8-2, Ex. 1, Att. 5, DHO Report). The DHO advised Williams that she was changing Disciplinary Code Section 305, Possession of Anything not Authorized, to Possession of a Hazardous Tool, a violation of Disciplinary Code Section 108, as she determined it a more appropriate charge. Id. Williams was again advised of his rights. Id. He elected to have 24 hour advance notice. Id. The hearing was then rescheduled. Id.

On May 2, 2006, Williams appeared for the rescheduled hearing. (Doc. 8-2, Ex. 1, Att. 5, Discipline Hearing Officer Report). The DHO determined that Petitioner had received advance written notice of the charge on April 7, 2006, and was advised of his rights before the DHO by a staff member on April 11, 2006. Id. Petitioner requested Unit Manager, D. Griffin as his staff representative. Id.

3

Petitioner did not request any witnesses. Id. During the hearing, Petitioner denied the charges, stating the following:

> Not true. I didn't have a cell phone and I didn't do anything to help anyone escape. On 12/8, an FBI agent asked me questions about Officers at the Camp and I told him I didn't know anything. On Mar 21, he asked me again and I told him the same thing. I didn't make any statement. I was locked up from September to November. I was at the Camp for three years. I know those guys from the previous investigation. I don't know them well.

Id. The documentary evidence which the DHO considered in making her determination included the Incident Report and Investigation, a Memorandum submitted by SIA (Special Investigative Agent) D. Acre. Id. Confidential information was used by the DHO in support of his findings, but was not revealed to the inmate. Id. The confidential information was documented in a separate report. The specific evidence taken from the relied upon documentary evidence was as follows:

> A DHO hearing conducted on May 2, 2006, at 1:10 p.m., revealed that you (Martiese Williams, Reg. No. 00941-021) committed the prohibited act of Code 299, Conduct Which Disrupts, Most Like, Code 200A, Aiding Escape From the Atlanta Federal Prison Camp and Code 217, Receiving Money From Any Person for Any Illegal or Prohibited Purpose and Code 108, Possession of a Hazardous Too (cell phone). Evidence relied on was information submitted by

4

the reporting employee, conclusion by the Investigating Lieutenant and supporting documentary evidence.

You were found guilty of Code 299, Conduct Which Disrupts, Most Like, Code 200A, Aiding Escape From the Atlanta Federal Prison Camp and Code 217, Receiving Money From Any Person For Any Illegal or Prohibited Purpose and Code 108, Possession of a Hazardous Tool (cell pone) based on information provided by the reporting employee (SIA, D. Acre). The writer reported based on surveillance camera footage and corroborated witness statements (which you were made aware of), an SIS investigation determined you received money from other inmates to assist them in departing the environs of the Federal Prison Camp on several occasions. The writer reported you also, admitted to posing as a lookout and having possession of a cellular telephone to communicate with the inmates during their departures and returns.

The DHO considered that cellular telephones are considered sensitive equipment. Cellular telephones are a hazardous tool. The action on the part of any inmate to possess a hazardous tool, (cellular phone/charger) in any correctional institution seriously jeopardizes the security of the institution and poses a threat to the ability of staff to provide for the safety and security for staff, inmates and the general public as a whole. Possessing a cellular phone gives an inmate an opportunity to make completely unmonitored calls. These calls can contain threats to the general public or plans for an escape attempt or planning or participating in other illegal activity.

You denied the charges before the DHO, however, you offered no evidence to dispute the charges. Your mere statement without any creditable evidence, is of lesser

5

> weight than the credibility of the information provided by the reporting employee. Further, the reporting employee would have nothing to gain by submitting false information on you. Additionally, you were interviewed in the presence of Special Agent Ray Johnson (FBI), and Special Agent Delmastro (OIG), who also, took note of your statement to the SIA.
>
> Therefore, it was found you committed the prohibited acts.

Id. For violating Code 299/200A, the DHO sanctioned Petitioner to thirty (30) days disciplinary segregation, disallowance of twenty-seven (27) days good conduct time, a ninety (90) day loss of each, visiting, commissary, and telephone privileges, and recommended a transfer to a facility commensurate to Williams' security needs. Id. On the Code 217 violation, the DHO sanctioned Williams to thirty (30) days disciplinary segregation, suspended pending 180 days clear conduct, disallowance of twenty-seven (27) days good conduct time, and a ninety (90) day loss of each, commissary, telephone and visiting privileges. Id. Finally, for Code violation 108, the DHO sanctioned Williams to thirty (30) days disciplinary confinement, suspended pending 180 days of clear conduct, disallowance of forty (40) days good conduct time, and a ninety (90) day loss of each commissary, telephone, and visiting privileges. The DHO documented her reasons for the sanctions given as follows:

> The action/behavior on the part of the inmate to aid another

6

inmate in an escape from any facility and/or furlough transfer creates an inability of the Bureau of Prisons and assigned institution to maintain proper inmate accountability at all times. Inmates in escape status demonstrate an inability to handle the responsibility required of them for assignment to a camp, furlough, and/or furlough transfer. Also, inmates on escape status pose an inherent potential for violent (sic) during recapture, as well as to the public. The action/behavior on the part of any inmate to receive money from any person for any illegal or prohibited purposes poses a serious threat to the health, safety and welfare of not only the inmate(s) involved, but all other inmates and staff alike. This kind of action has proven in the past to cause serious fights between inmates as well as deaths resulting from actions of this sort. The action/behavior on the part of any inmate to possess or introduce a hazardous tool (cell phone) into any correctional institution threatens the safety and security, not only of the inmate involved, but that of the entire institution. As in the past, inmates have used hazardous tools (cell phone) to effect escapes. Therefore, sanctions imposed by the DHO were taken to let the inmate know that he, and he alone will be held responsible for his action/behavior at all times.

The sanctions for disciplinary segregation time is for punishment. Disallowance of good conduct time is to prolong your incarceration time. Loss of visitation, phone and commissary time is to impact on your pleasure privileges. Also, a recommendation for a disciplinary transfer has been imposed. The basis fo this transfer is due to the severity of the offenses. Behavior of this nature is serious, and warrants greater supervision and control than offered in a Camp environment. Hopefully, the sanctions imposed will have the desired impact in bringing about a change in your behavior.

7

Id. Williams was advised of his appeal rights at the conclusion of the hearing. Id.

**Discussion**

Liberty interests protected by the Fifth Amendment may arise either from the Due Process Clause itself or from statutory law. Torres v. Fauver, 292 F.3d 141 (3d Cir.2002). It is well-settled that "prison disciplinary proceedings are not part of a criminal prosecution and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Nevertheless, the Supreme Court found that there can be a liberty interest at stake in disciplinary proceedings in which an inmate loses good conduct time. Id. Since Petitioner's sanctions did include the loss of good conduct time, Petitioner has identified a liberty interest in this matter.

In Wolff, the Supreme Court set forth the following minimum procedural due process rights to be afforded to a prisoner accused of misconduct in prison which may result in the loss of good time credit: (1) the right to appear before an impartial decision-making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate

8

or complex issues are involved; and (5) a written decision by the fact finder of the evidence relied upon and the rationale behind the disciplinary action. Wolff, 418 U.S. at 563-67. The Supreme Court has held that the standard of review with regard to the sufficiency of the evidence is whether there is "any evidence in the record that could support the conclusion reached by the disciplinary board." Superintendent v. Hill, 472 U.S. 445-46 (1985); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir.1992). If there is "some evidence" to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff. Hill, 472 U.S. at 457.

      The Bureau of Prisons' inmate disciplinary procedures are codified at 28 C.F.R. § 541, et seq., and entitled, Inmate Discipline and Special Housing Units. These procedures are intended to meet or exceed the due process requirements prescribed by the Supreme Court. See Von Kahl v. Brennan, 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily

held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends or holidays. See 28 C.F.R. § 541.15(b). This period may be extended for good cause shown by either the inmate or staff. See 28 C.F.R. § 541.15 (k). If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision." 28 C.F.R. § 541.17(g).

In the instant case it is clear that Williams was afforded all of the required procedural rights set forth in Wolff. He received timely notice of the incident report. He was properly informed of his rights before the hearing, as well as given the opportunity to make his own statement, present documentary evidence, have a staff representative, and to present witnesses on his behalf. Petitioner chose only to make a statement, which was documented in the DHO's report. Petitioner also received a written decision setting forth the evidence relied upon by the DHO

and the rationale behind the decision. Petitioner was then notified of his right to appeal.

With respect to Petitioner's claim that the DHO was not impartial, this claim is wholly unsupported. Pursuant to BOP policy, "[i]n order to insure impartiality, the DHO may not be the reporting officer, investigating officer, or UDC member, or a witness to the incident or play any significant part in having the charge(s) referred to the DHO." See 28 C.F.R. § 541.16(b). In this case, the DHO was neither involved in reporting or investigating the incident with regard to Petitioner, and there is nothing in the record to suggest that the DHO was a witness to or played a role in having the charges against Petitioner referred to the DHO. To the extent that Petitioner states that the DHO "was partial to SIA D. Acres because all documents were submitted by him and were all merely adopted into the record as factual by the DHO" and that "by doing this the DHO was only record-keeping and not fact-finding as her job requires," the record reflects that Williams was provided the opportunity to present his own witnesses and documentary evidence to refute the charges, but he chose not to do so.

Finally, with respect to Petitioner's claim that his due process rights were violated when the confidential informant was not made available for Petitioner

11

to question, confrontation and cross-examination are not constitutional requirements in disciplinary hearings. See Wolff, 418 U.S. at 567.

Since Williams was afforded all of his procedural rights, the only remaining issue is whether there was sufficient evidence to support the decision by the DHO. The record clearly reveals the existence of both testimony offered and documentary evidence submitted at the hearing to allow the DHO to conclude that the greater weight of the evidence supported a finding of guilt. In addition to the statement provided by Petitioner, the DHO also considered the investigative report and staff memoranda submitted. Based on the foregoing, the Court concludes that the evidence before the DHO was sufficient to support the outcome of the hearing and meets the requirements imposed by the Due Process Clause. Accordingly, the petition will be denied.

Finally, the Court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541.13. Petitioner was found guilty of a 200-level, high severity prohibited act. Pursuant to 28 C.F.R. § 541.13, the following are some of the sanctions available for 200 level offenses:

> B.1. Disallowance of good conduct time;
> D. Disciplinary segregation; and,
> G. Loss of privileges.

28 C.F.R. § 541.13 (Tables 3 and 4). Thus, the sanctions imposed by the DHO in the present case were consistent with the severity level of the prohibited act and within the maximum available to the DHO. Accordingly, the petition will be denied. An appropriate Order follows.

Dated: November 16, 2007

United States District Judge

UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

MARTIESE WILLIAMS,  :  CIVIL ACTION NO. 3:CV-07-0590
:
Petitioner  :  (Judge Nealon)
:
v.  :
:
S. HISLOP,  :
:
Respondent  :

## ORDER

AND NOW, this 16th day of **NOVEMBER, 2007**, for the reasons set forth in the accompanying Memorandum, **IT IS HEREBY ORDERED THAT:**

1. The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk of Courts is directed to **CLOSE** this case.

*[signature]*
**United States District Judge**